JEREMY T. ELMAN (SBN 223696)
Jeremy.Elman@allenovery.com
ALLEN & OVERY LLP
10250 Constellation Blvd, Suite 1000
Los Angeles, California 90067
Telephone:  (650) 388-1650
Facsimile:   (650) 388-1699

FERNANDO J. MENENDEZ, JR. (*pro
hac vice* application forthcoming)
fmenendez@sequorlaw.com
FRANCIS CURIEL (*pro hac vice*
application forthcoming)
fcuriel@sequorlaw.com
SEQUOR LAW
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile:  (305) 372-8202

Attorneys for Plaintiff SAFETY PPE,
LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SAFETY PPE, LLC,<br><br>              Plaintiff,<br><br>       v.<br><br>SKANDA GROUP OF INDUSTRIES LLC, NAGENDRA KARRI, an individual, and 1221 SKAI INVESTMENTS LLC,<br><br>              Defendants. | Case No. 2:22-cv-01814<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

- 1 -

## **COMPLAINT**

Plaintiff Safety PPE LLC ("Plaintiff" or "SPPE"), by and through its attorneys, and for its Complaint against Skanda Group of Industries LLC ("Skanda"), Mr. Nagendra Karri ("Karri"), and 1221 Skai Investments LLC ("1221 Skai Investments" and, together with Skanda and Karri, the "Defendants"), hereby alleges as follows:

## **JURISDICTION & VENUE**

1.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332.

2.       Plaintiff is a citizen of the State of Florida.

3.       All the members of Plaintiff are citizens of the State of Florida.

4.       Plaintiff has its principal place of business in Florida at 1313 Ponce De Leon Boulevard, Suite 200, Coral Gables, Florida 33134.

5.       Plaintiff is a member-managed LLC registered to do business in the State of Florida.  FAMB LLC is the sole member of Plaintiff.  Frank C. Quesada is the sole member of FAMB LLC, and is a citizen of the State of Florida.

6.       Defendant Skanda is a citizen of the State of California.

7.       All the members of Skanda are citizens of the State of California.

8.       Skanda has its principal place of business in California at 2029 Century Park East, Suite 400 N, Los Angeles, California, 90067.

9.       Skanda regularly conducts business in the State of California.

10.       Skanda is a member-managed California LLC registered to do business in the State of California at 2029 Century Park East, Suite 400 N, Los Angeles, California, 90067.  On September 8, 2020, Skanda converted from a Louisiana LLC to a California LLC.

11.       Skanda's three members are citizens of the State of California: co-defendant Nagendra Karri (who is also Skanda's registered agent for service of process), Ms. Chetna Jhamb, and Ms. Nisha Yogeeshwara. The three members of

1   Skanda have all listed the following address with the California Secretary of State

2   in their corporate submissions as their personal address: 20940 Community Street,

3   Canoga Park, CA 91304.

4       12.    Defendant Karri is a citizen of the State of California.  Karri's business

5   address is 2029 Century Park East, Suite 400 N, Los Angeles, California, 90067.

6   Although Karri has listed his personal address with the California Secretary of State

7   as 20940 Community Street, Canoga Park, CA 91304, his actual residence is at 16

8   Mustang Lane, Bell Canyon, California 91307 (the "Mustang Lane Property"),

9   which is a property owned in the name of the recently-formed 1221 Skai

10  Investments.

11      13.    Defendant 1221 Skai Investments is a California limited liability

12  company registered to do business in the State of California at 18500 Pioneer Blvd,

13  Suite 204, Artesia, California 90701.

14      14.    The sole Member and President of 1221 Skai Investments is Ms.

15  Sujatha Karri, who, upon information and belief, is Defendant Nagendra Karri's

16  mother. Sujatha Karri has listed the following address in her corporate submission

17  with the California Secretary of State as her personal address: "Seethmadhara Near

18  Krishna Mandir", "Visakhapatnam (other country)", 530013, which is in India.

19      15.    Defendants Skanda and Nagendra Karri were recently sued in the

20  United States District Court for the Western District of Louisiana, in the matter

21  styled *Talbot's Phamaceuticals Family Products, LLC v. Skanda Group of*

22  *Industries LLC, et al*., Case 3:20-cv-00716-TAD-KDM.  In that matter, Skanda and

23  Karri filed a motion to dismiss for lack of personal jurisdiction on the ground that

24  both Skanda and Karri are citizens of the State of California pursuant to 28 U.S.C. §

25  1332.  Skanda argued that Skanda is a Los Angeles, California-based medical

26  supply wholesaler, of which Karri is the Managing Member and President.  Skanda

27  further argued that it moved its entire operations to Los Angeles, California in

28  2017.

16.     Plaintiff recently sued Defendants Skanda and Karri in this Court, the United States District Court for the Central District of California, in the matter styled *Safety PPE, LLC v. Skanda Group of Industries LLC, et al.*, Case No. CV-21-3967-JFW(PDx) (the "Pending C.D. Cal. Action"), which case remains pending as of the date of this filing.

17.     Because Plaintiff is a citizen of the State of Florida, while Defendants Skanda and Karri are both citizens of the State of California, and Defendant 1221 Skai Investments' only Member, Sujatha Karri, is a citizen of India, there is complete diversity of citizenship between Plaintiff and Defendants to establish that diversity jurisdiction exists.

18.     The parties are citizens of different states and the amount in controversy exceeds $75,000.

19.     The Court has personal jurisdiction over all Defendants.  A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this judicial district, as Skanda's and 1221 Skai Investments' principal places of business are located in this judicial district.  Moreover, a substantial part of property (*i.e.*, the Mustang Lane Property) that is the subject of this action is situated in this judicial district. On information and belief, Defendants Skanda, Karri, and 1221 Skai Investments transact all of their business in this judicial district, especially as it relates to the subject matter in this action.

20.     Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b), (c) and (d).

## **PARTIES**

21.     Plaintiff Safety PPE LLC is incorporated under the laws of the State of Florida and has its principal place of business at 1313 Ponce De Leon Boulevard, Suite 200, Coral Gables, Florida 33134.

22.     Defendant Skanda Group of Industries LLC is a member managed limited liability company organized and existing under the laws of the State of

- 4 -

California.  Defendant Skanda is a citizen of the State of California and is located in this judicial district.  Defendant Skanda has three members, each of whom resides in California.

23.     Defendant Nagendra Karri is the founder and managing member of Defendant Skanda and regularly conducts business from 2029 Century Park East, Suite 400 N, Los Angeles, CA 90067 and 20940 Community Street, Canoga Park, CA 91304.  Defendant Karri resides in California. Specifically, Defendant Karri resides at the Mustang Lane Property, which is a property owned in the name of the recently-formed 1221 Skai Investments.

24.     Defendant 1221 Skai Investments LLC is a member managed limited liability company organized and existing under the laws of the State of California and is located in this judicial district. Defendant 1221 Skai Investments LLC has one member, who resides in India.

25.     Upon information and belief, Defendants Karri and Skanda used 1221 Skai Investments to perpetrate a fraud against Plaintiff and are the alter egos of 1221 Skai Investments, and vice versa. The Court should disregard the limited liability company and hold 1221 Skai Investments directly liable for the injury inflicted on Plaintiff and the resulting damages.

## **INTRODUCTION**

26.     Plaintiff is the victim of a high-value and elaborate fraud. Specifically, this action arises out of Defendants' scheme to defraud Plaintiff of over $2.5 million by (1) taking advantage of the COVID-19 pandemic, (2) frustrating Plaintiff's efforts to enforce attachment orders recently entered against Skanda in the Pending C.D. Cal. Action, and, (3) diverting Plaintiff's funds in a series of fraudulent transfers to a web of transferees.

27.     Plaintiff has considerable experience in the healthcare industry and in selling personal protective equipment (PPE).  One type of PPE in which Plaintiff has experience is nitrile gloves, which are a specific type of disposable glove that

1  provides excellent protection against exposure and are particularly apt for the

2  COVID-19 pandemic.  Nitrile gloves are in high demand by healthcare workers.

3       28.    When COVID-19 struck, Plaintiff was approached by buyers and

4  sellers of various PPE, including buyers and sellers seeking nitrile gloves.

5       29.    Plaintiff was interested in purchasing FDA certified nitrile gloves for

6  sale in the United States through established channels.

7       30.    Plaintiff, Defendant Skanda, and Defendant Karri were introduced by

8  mutual acquaintances in the PPE business, including Skanda and Karri's agent,

9  Danny Hoyos ("Hoyos").

10       31.    Based on Skanda and Karri's representations about their ability to sell

11  to Plaintiff certain nitrile gloves meeting FDA 510(k) certification requirements

12  from specific factories in Thailand, Malaysia, Vietnam and Taiwan, on or around

13  October 2, 2020 Plaintiff entered into a "Contract for the Sale of Goods" (the

14  "Contract") with Skanda for a continuing series of purchase orders.  A copy of the

15  Contract is attached as **Exhibit A**.

16       32.    The Contract stated that only Plaintiff and Skanda were parties to the

17  Contract.

18       33.    Plaintiff intended to sell in the United States the nitrile gloves received

19  from Skanda pursuant to the Contract.

20       34.    After signing the Contract, and at Skanda and Karri's specific

21  instruction, one of Plaintiff's representatives traveled to Taiwan at Plaintiff's own

22  expense to inspect one of these factories during the COVID-19 pandemic.  Skanda

23  and Karri represented that this factory in Taiwan had given Defendants an

24  "allocation" of up to five million boxes per month of nitrile gloves meeting FDA

25  510(k) certification requirements.

26       35.    On October 14, 2020, while Plaintiff's representative quarantined in

27  his hotel room in Taiwan waiting to conduct an inspection of the factory to

28  determine if the nitrile gloves would meet the criteria in the Contract, Plaintiff,

- 6 -

Defendant Skanda, and Defendant Karri entered into a modification of the Contract (the "Modification") for Plaintiff's purchase of one million boxes of nitrile gloves (the "Project Gloves"). A copy of the Modification is attached as **Exhibit B**.

36.     Skanda and Karri represented that the Project Gloves would be manufactured by the specific factory Plaintiff's representative would visit that had FDA 510k certification and where Plaintiff would inspect the Project Gloves that the factory would then manufacture pursuant to the Modification.

37.     Based on the Contract, the Modification, and Skanda and Karri's representations, on or around October 15, 2020, Plaintiff paid Skanda $2,580,000, which was 30% of the entire purchase price for the one million boxes of nitrile gloves. The remainder of the purchase price ($6,020,000) was to be paid by Plaintiff to Skanda upon completion of the manufacturing and an industry-standard inspection of the one million boxes of Project Gloves as expressly defined in the Modification.

38.     Despite the Contract, the Modification, and the continued representations of Skanda, Karri, and Hoyos, Defendants never delivered the Project Gloves to Plaintiff, and Skanda and Karri refuse to return the $2,580,000 to Plaintiff.

39.     Skanda and Karri and their attorneys acknowledge that Skanda and Karri are responsible for returning $2,580,000 to Plaintiff because Skanda and Karri have not delivered the Project Gloves to Plaintiff.

40.     Skanda and Karri induced Plaintiff to pay $2,580,000 to them based on their representations, in particular that the Project Gloves were available for prompt delivery to Plaintiff at the time of the Modification. On information and belief, Skanda and Karri intentionally and deliberately misrepresented facts regarding (1) their ability to sell and deliver to Plaintiff certain nitrile gloves meeting FDA 510(k) certification requirements from certain factories in Thailand, Malaysia, Vietnam and Taiwan; (2) the availability of the Project Gloves; and (3) Skanda's

1    "allocation" of nitrile gloves from certain factories.

2       41.   On or around January 12, 2021, Karri claimed for the first time (1) that

3    the $2,580,000 Plaintiff paid on October 15, 2020 was no longer in his or Skanda's

4    possession, (2) that he and Skanda had used the $2,580,000 for a separate purpose

5    to fund a number of products at a third-party factory called Formosa Energy Carbon

6    Factory ("Formosa Carbon"), and (3) that, as a result, he and Skanda no longer had

7    access to the $2,580,000.

8       42.   On February 11, 2021, and on subsequent dates, Plaintiff formally

9    demanded that Skanda and Karri return the amount of $2,580,000, but Skanda and

10   Karri have refused to do so.

11      43.   Based on Skanda and Karri's failure to deliver the Project Gloves or

12   any goods or products whatsoever, and their failure to return the $2,580,000,

13   Plaintiff commenced the Pending C.D. Cal. Action. Specifically, on May 11, 2021,

14   Plaintiff filed their complaint against Skanda and Karri, which complaint was

15   amended on August 2, 2021.

16      44.   In the Pending C.D. Cal. Action, Plaintiff alleges claims for Breach of

17   Contract and Money Had and Received. Plaintiff further alleges, *inter alia*, that (1)

18   Karri used Skanda to perpetrate a fraud against Plaintiff, (2) Karri is the alter ego of

19   Skanda, and (3) Karri should be held personally and directly liable for the injury

20   inflicted on Plaintiff and the resulting damages. Specifically, in the Pending C.D.

21   Cal. Action, Plaintiff requests damages in an amount to be determined at trial, but

22   not less than $2,580,000.

23      45.   In the Pending C.D. Cal. Action, Plaintiff issued formal discovery

24   requests to Skanda calling for, *inter alia*, the production of all documents and

25   communications concerning Skanda's use of the $2.58 million wired to Skanda by

26   Plaintiff. On August 27, 2021, Skanda produced only limited information relating

27   to its receipt and purported use of such funds (*i.e.*, a single Chase bank "wire

28   transfer outgoing request" dated October 30, 2020 for a wire transfer from Skanda

to Formosa Carbon, and a single page of a redacted Chase bank account statement for an account ending in 0635, reflecting only an outgoing wire transfer to Formosa Carbon on October 30, 2020 in the amount of $3.6 million). Skanda did not produce any further information concerning Skanda's subsequent use of the $2.58 million wired to Skanda by Plaintiff.

46.    In the Pending C.D. Cal. Action and in response to Plaintiff's formal discovery requests, Skanda has admitted (i) that it entered into the relevant agreements with Plaintiff for the purchase of one million boxes of nitrile gloves; (ii) that Plaintiff transferred the $2.58 million referenced herein to Skanda in October 2020; (iii) that Skanda never delivered any nitrile gloves to Plaintiff; and (iv) that Skanda has not paid and/or returned the $2.58 million transferred by Plaintiff.

47.    During the Pending C.D. Cal. Action, Plaintiff conducted an independent investigation (the "Investigation") and issued non-party subpoenas in furtherance of the court's attachment orders against Skanda, as detailed below.

48.    Based on facts discovered during the Investigation and upon receipt of non-party production from Chase bank (the "Chase Production"), Plaintiff now brings this action seeking to avoid Skanda and Karri's series of fraudulent transfers of Plaintiff's $2.58 million to various transferees.

## FACTUAL ALLEGATIONS

49.    This is an action to set aside voidable transfer, for conspiracy to commit voidable transfer, and for a declaration that 1221 Skai Investments is an alter ego of Skanda and Karri (and vice versa).

50.    In the Pending C.D. Cal. Action:

    a. On August 16, 2021, Plaintiff filed an ex parte application for a right to attach order, temporary protective order, and order for issuance of writ of attachment against Skanda (the "Attachment Application");

    b. On August 17, 2021, Skanda filed an opposition to the

- 9 -

Attachment Application;

c. On August 17, 2021, U.S. Magistrate Judge Patricia Donahue ordered Skanda to file any opposition to the Attachment Application on or before September 1, 2021, with a hearing to be held on September 13, 2021;

d. On September 1, 2021, Skanda filed its opposition to the Attachment Application;

e. On September 8, 2021, Plaintiff filed its reply in support of the Attachment Application;

f. On September 13, 2021, Magistrate Judge Donahue held a hearing on Plaintiff's Attachment Application and ordered the parties to submit (1) supplemental briefing on the appropriate amount of an undertaking, and (a) for Plaintiff, evidence of its attorneys' fees and costs, and (b) for Skanda, any opposition to the amount of the attorneys' fees;

g. Following that briefing, on September 27, 2021, Magistrate Judge Donahue granted Plaintiff's Attachment Application against Skanda in the amount of $2,806,833.58, including attorneys' fees and costs;

h. On October 4, 2021, Plaintiff posted an undertaking on in the amount of $10,000, as ordered by the court;

i. On October 4, 2021, Plaintiff filed requests for a writ of attachment and right to attach order against Skanda;

j. On October 5, 2021, Magistrate Judge Donahue entered (1) the "Right to Attach Order and Order for Issuance of Writ of Attachment after Hearing" against Skanda (the "Right to Attach Order"); and (2) the "Writ of Attachment after Hearing" against Skanda (the "Writ of Attachment"), both in the amount of

1   $2,806,833.58;

2       k.  On November 8, 2021, DDS Legal Support, Plaintiff's court-

3          approved process server, served the Writ of Attachment on

4          Chase Bank;

5       l.  On December 7, 2021, the U.S. Marshals Service filed the

6          corresponding proof of service with the Court; and

7       m. On or around December 20, 2021, the U.S. Marshals Service

8          informed the office of Plaintiff's counsel that they had attached

9          the assets of Skanda located at Chase Bank, but that the amount

10          was less than $500.

11      51.   The Investigation has revealed the following facts:

12       a.  On August 27, 2021—11 days after Plaintiff filed its Attachment

13          Application in the Pending C.D. Cal. Action—1221 Skai

14          Investments was incorporated in California. A copy of the publicly

15          available LLC Registration/Articles of Organization for 1221 Skai

16          Investments, which was filed with the California Secretary of State,

17          is attached hereto as **Exhibit C**;

18       b.  The sole Member and President of 1221 Skai Investments appears to

19          be one Sujatha Karri, who appears to reside in India. A copy of the

20          publicly available Statement of Information for 1221 Skai

21          Investments, which was filed with the California Secretary of State,

22          is attached hereto as **Exhibit D**;

23       c.  Upon information and belief, Sujatha Karri is the mother of

24          Defendant Karri;

25       d.  On October 8, 2021—11 days after the Court granted Plaintiff's

26          Attachment Application and three (3) days after the Court entered

27          the Right to Attach Order and Writ of Attachment against Skanda—

28          1221 Skai Investments purchased the Mustang Lane Property;

- 11 -

e. 1221 Skai Investments purchased the Mustang Lane Property for $2,550,000 (the "Mustang Lane Purchase Price"), an amount that corresponds almost exactly with the $2,580,000 wired to Skanda by Plaintiff. A copy of the Mustang Lane Property Detail Report is attached hereto as **Exhibit E**;

f. Upon information and belief, the Mustang Lane Property is the only property owned by 1221 Skai Investments; and

g. Upon information and belief, Karri is associated with and resides at the Mustang Lane Property.

52. The information described in paragraphs 51(a) through (g) above was never disclosed by Skanda or Karri in the Pending C.D. Cal. Action or otherwise.

53. As of the date of this filing, Skanda and Karri have failed to disclose any assets to satisfy the Writ of Attachment, other than a single Chase bank account with less than $500 at the time of attachment.

54. According to the Chase Production:

a. Skanda received a refund in the amount of $3.6 million from Formosa Carbon on January 5, 2021 (the "Formosa Refund");

b. Beginning six (6) days after the Formosa Refund and through May 19, 2021, Skanda transferred at least $519,450 to Coinbase, a cryptocurrency exchange platform, in a total of 18 known transfers (the "Coinbase Transfers");

c. The Coinbase Transfers include "Ind Name: Nagendra Karri" in the bank statement transfer descriptions;

d. Following the Formosa Refund, Skanda transferred approximately $65,000 to Chetna Jhamb, the other manager of Skanda;

e. Following the Formosa Refund, Skanda transferred a total of approximately $693,500 to an unidentified account ending in -

8075 ($693,000 of which was transferred in the months leading to 1221 Skai Investments' acquisition of the Mustang Lane Property);

    i.  To date, this same account ending in -8075 has transferred a total of approximately $37,700 to Nagendra Karri's individual Chase account.

f.  Following the Formosa Refund, Skanda transferred a total of approximately $1,325,000 to an unidentified account ending in -7860 (all of which was transferred in the months leading to 1221 Skai Investments' acquisition of the Mustang Lane Property);

    i.  To date, this same account ending in -7860 has transferred a total of approximately $115,750 to Nagendra Karri's individual Chase account.

g.  Following the Formosa Refund, Skanda transferred a total of approximately $780,200 to an unidentified account ending in -3811 ($585,000 of which was transferred in the months leading to 1221 Skai Investments' acquisition of the Mustang Lane Property);

    i.  To date, this same account ending in -3811 has transferred a total of approximately $9,000 to Nagendra Karri's individual Chase account.

h.  Following the Formosa Refund, Skanda transferred a total of approximately $210,300 to another Chase bank account owned by Skanda (ending in -0668), which account was not disclosed in response to Plaintiff's discovery requests in the Pending C.D. Cal. Action; and

i.  Following the Formosa Refund, Skanda transferred a total of approximately $58,825 to another Chase bank account owned by

- 13 -

Skanda (ending in -1960), which account was also not disclosed in response to Plaintiff's discovery requests in the Pending C.D. Cal. Action.

    j.  On September 16 and 17, 2021, Nagendra Karri transferred approximately $279,000 to Sujatha Karri (the "Sujatha Transfers"), the sole Member and President of 1221 Skai Investments;

        i.  The Sujatha Transfers occurred (i) after Plaintiff filed the Attachment Application in the Pending C.D. Cal Action, (ii) after the formation of 1221 Skai Investments, and (iii) approximately three (3) weeks before 1221 Skai Investments purchased the Mustang Lane Property.

## FIRST CAUSE OF ACTION

**To Set Aside Voidable Transfer Pursuant to Cal. Code Civ. Proc. § 3439 *et seq.***

**(Defendant Nagendra Karri)**

55.    Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

56.    Upon information and belief, after the Formosa Refund, Defendants Skanda and/or Karri caused the transfer of all or a portion of Plaintiff's $2.58 million by way of the Coinbase Transfers.

57.    At the time of the Coinbase Transfers, Plaintiff was Skanda and Karri's creditor.

58.    Upon information and belief, including as a result of Skanda's inability to return the funds that are the subject of the Pending C.D. Cal. Action, and as reflected in several pending litigation cases filed against Skanda and/or Karri in various jurisdictions in the United States, Defendants Skanda and Karri are generally not paying their debts as they become due.

59.    Further, during the course of the Pending C.D. Cal. Action, Skanda

- 14 -

and Karri have represented that Skanda does not have assets sufficient to pay the amounts owed to Plaintiff.

60.     Upon information and belief, the Coinbase Transfers were made with actual intent to hinder, delay, or defraud Skanda and Karri's creditors, and reflect numerous badges of fraud, including the following:

1)  the transfers were sent to a Coinbase account (the "Coinbase Account") which, upon information and belief, belongs and/or is controlled by Karri, the Founder and Managing Member of Skanda (*i.e.*, an insider);

2)  Skanda and/or Karri, as the apparent owners of the Coinbase account, retained possession or control of the property transferred after the transfers;

3)  the transfers were concealed and not disclosed;

4)  the transfers occurred after Skanda and Karri had been sued, threatened with suit, or demanded by Plaintiff to return Plaintiff's $2.58 million; and

5)  Skanda and/or Karri removed and concealed assets away from the reach of Plaintiff.

61.     Upon information and belief, the value of the consideration received in exchange for the Coinbase Transfers was not reasonably equivalent to the value of such transfers, which were made at a time when Skanda and/or Karri (i) was insolvent, (ii) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, and/or (iii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

62.     By reason of the foregoing, Plaintiff is entitled to relief pursuant to Cal. Code Civ. Proc. § 3439.07, including but not limited to:

a.     Avoidance of the Coinbase Transfers;

b. An attachment or other provisional remedy against the asset transferred or other property of the transferee, including the Coinbase Account, in accordance with the procedures described in Title 6.5 (commencing with Section 481.010) of Part 2 of the Code of Civil Procedure, or as may otherwise be available under applicable law;

c. An injunction against further disposition or hypothecation of the Coinbase Account by Defendants or anyone acting in concert with Defendants; and

d. Appointment of a receiver to take charge of the Coinbase Account or other property of the transferee.

## SECOND CAUSE OF ACTION

**To Set Aside Voidable Transfer Pursuant to Cal. Code Civ. Proc. § 3439 *et seq.***

**(Defendant 1221 Skai Investments)**

63. Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

64. Upon information and belief, after the Formosa Refund, Defendants Skanda and/or Karri caused the transfer of all or a portion of Plaintiff's $2.58 million to 1221 Skai Investments—including through transfers made to that entity's sole member, Nagendra Karri's mother, pursuant to the Sujatha Transfers and pursuant to the Bulk Account Transfers (as defined below)—which were used by 1221 Skai Investments to purchase the Mustang Lane Property (the "Transfers to 1221 Skai Investments").

65. At the time of the Transfers to 1221 Skai Investments, Plaintiff was Skanda and Karri's creditor.

66. Upon information and belief, including as a result of Skanda's inability to return the funds that are the subject of the Pending C.D. Cal. Action, and as reflected in several pending litigation cases filed against Skanda and/or Karri in various jurisdictions in the United States, Defendants Skanda and Karri are generally not paying their debts as they become due.

67.     Further, during the course of the Pending C.D. Cal. Action, Skanda and Karri have represented that Skanda does not have assets sufficient to pay the amounts owed to Plaintiff.

68.     Upon information and belief, the Transfers to 1221 Skai Investments were made with actual intent to hinder, delay, or defraud Skanda and Karri's creditors, and reflect numerous badges of fraud, including the following:

1) Karri transferred approximately $279,000 to his blood relative, his mother (the sole Member and President of 1221 Skai Investments) three weeks before 1221 Skai Investments bought the Mustang Lane Property;

2) the Chase Production reflects online transfers (in round numbers that are not associated with any invoice or transaction) from Skanda's account to three unidentified accounts (ending in -8075, -7860, and -3811) totaling approximately $2,603,000 (the "Bulk Account Transfers"), all of which were made *after* Skanda received a refund of Plaintiff's $2.58 million, and all of which were made *prior to* 1221 Skai Investments' acquisition of the Mustang Lane Property for $2.55 million;

3) Karri uses the Mustang Lane Property as his personal residence;

4) the transfers were not disclosed and Skanda and/or Nagendra Karri's interest in the property was concealed by virtue of the 1221 Skai Investments ownership structure;

5) the transfers were made either (i) after commencement of the Pending C.D. Cal. Action against Skanda and Nagendra Karri, (ii) after Plaintiff's filing of the Attachment Application in the Pending C.D. Cal. Action, and/or (iii) after entry of the Right to Attach Order and Writ of Attachment against Skanda in the Pending C.D. Cal. Action;

- 17 -

6) Skanda and/or Karri removed and concealed assets away from the reach of Plaintiff;

7) 1221 Skai Investments was formed after Plaintiff filed the Attachment Application in the Pending C.D. Cal. Action; and

8) the value of the consideration received by Skanda from Plaintiff ($2.58 million) was reasonably equivalent to the value of the Transfers to 1221 Skai Investments for the purchase of the Mustang Lane Property.

69.     Upon information and belief, the value of the consideration received in exchange for the Transfers to 1221 Skai Investments were not reasonably equivalent to the value of such transfers, and were made at a time when each of the Defendants (i) was insolvent, (ii) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, and/or (iii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

70.     By reason of the foregoing, Plaintiff is entitled to relief pursuant to Cal. Code Civ. Proc. § 3439.07, including but not limited to:

e.     Avoidance of the Transfers to 1221 Skai Investments;

f.     An attachment or other provisional remedy against the asset transferred or other property of the transferee, including the Mustang Lane Property, in accordance with the procedures described in Title 6.5 (commencing with Section 481.010) of Part 2 of the Code of Civil Procedure, or as may otherwise be available under applicable law;

g.     An injunction against further disposition or hypothecation of the Mustang Lane Property by Defendants or anyone acting in concert with Defendants; and

h.      Appointment of a receiver to take charge of the Mustang Lane Property or other property of the transferee.

## THIRD CAUSE OF ACTION

### CONSPIRACY TO COMMIT VOIDABLE TRANSFER

### (Defendants Nagendra Karri and Skanda)

71.     Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

72.     Upon information and belief, Defendants Skanda and Karri agreed to commit a tortious act, to wit: to effectuate the Coinbase Transfers from Skanda to Karri with the intent to defraud, hinder, or delay Skanda's creditors.

73.     Defendants Skanda and Karri committed a wrongful act in furtherance of that agreement.

74.     Plaintiff suffered damages as a result of Defendants Skanda and Karri's conspiracy to commit fraud by effecting the Coinbase Transfers.

75.     Plaintiff therefore seeks a judgment holding Defendants Skanda and Karri liable in the amount of the Coinbase Transfers.

## FOURTH CAUSE OF ACTION

### CONSPIRACY TO COMMIT VOIDABLE TRANSFER

### (All Defendants)

76.      Upon information and belief, Defendants Skanda, Karri, and 1221 Skai Investments agreed to a common plan to commit a tortious act, to wit: to effectuate the Transfers to 1221 Skai Investments from Skanda and/or Karri to 1221 Skai Investments with the intent to defraud, hinder, or delay Skanda and/or Karri's creditors.

77.     Defendants Skanda, Karri, and 1221 Skai Investments committed a wrongful act in furtherance of that agreement.

78.     Plaintiff suffered damages as a result of Defendants Skanda, Karri, and 1221 Skai Investments' conspiracy to commit fraud by effecting the Transfers to 1221 Skai Investments.

79.     Plaintiff therefore seeks a judgment holding Defendants Skanda, Karri, and 1221 Skai Investments liable in the amount of the Transfers to 1221 Skai Investments.

## FIFTH CAUSE OF ACTION
### ALTER EGO LIABILITY
### (All Defendants)

80.     Plaintiff incorporates all of the above paragraphs as though fully set forth herein.

81.     Ms. Sujatha Karri, who, upon information and belief, is Defendant Nagendra Karri's mother, is the sole member and manager of Defendant 1221 Skai Investments.

82.     In addition to (1) the intra-family transfers by Karri to his mother, totaling $279,000, before 1221 Skai Investments' acquisition of the Mustang Lane Property; and (2) Karri's use of the only property owned by 1221 Skai Investments as his personal home, the Chase Production also reveals that Skanda (via two of its accounts) transferred approximately $8,500 to Sabu Syriac, the registered agent of 1221 Skai Investments, shortly before 1221 Skai Investments' acquisition of the Mustang Lane Property.

83.     Upon information and belief, 1221 Skai Investments is not an operating company, but a mere shell company that Defendants Skanda and Karri, who are alter egos, use as a conduit to shield Skanda and Karri's assets from their creditors, including Plaintiff.

84.     Upon information and belief, Skanda and Karri commingle their funds and assets with 1221 Skai Investments.

85.     Upon information and belief, Skanda and Karri used 1221 Skai

- 20 -

1   Investments to hinder, delay, and defraud their creditors, and the sole purpose of

2   1221 Skai Investments is to shield Skanda and Karri's assets from their creditors,

3   including Plaintiff.

4        86.    1221 Skai Investments' separate existence would work a fraud or

5   injustice upon Plaintiff, because, upon information and belief, Defendants Skanda

6   and Karri utilized 1221 Skai Investments merely as a shell entity to acquire the

7   Mustang Lane Property; and Karri and Skanda, acting through Karri, have

8   disregarded the separate company existence of 1221 Skai Investments, as Karri uses

9   that entity's sole asset, *i.e.*, the Mustang Lane Property, as his personal residence.

10        87.    Plaintiff therefore seeks a judgment from this Court declaring that

11   1221 Skai Investments is obligated for Skanda and Karri's debts to Plaintiff as an

12   alter ego of Skanda and Karri.

13   **PRAYER FOR RELIEF**

14        WHEREFORE, Plaintiff respectfully requests the following relief:

15        88.    Judgment in Plaintiff's favor and against Defendants on all causes of

16   action alleged herein;

17        89.    For an avoidance of the Coinbase Transfers and Transfers to 1221 Skai

18   Investments;

19        90.    For an attachment or continuation of any other provisional remedy

20   against the Coinbase Account and the Mustang Lane Property as may be available

21   under applicable law;

22        91.    For appointment of a receiver to take charge of the Coinbase Account

23   and the Mustang Lane Property, dispose, market and sell such property and any and

24   all assets contained within such property;

25        92.    For the remedy of a constructive trust for Plaintiff's benefit over the

26   Coinbase Account and the Mustang Lane Property and any and all proceeds from

27   the sale, hypothecation or other disposition of the Coinbase Account and Mustang

28   Lane Property;

93.     For an injunction against further disposition or hypothecation of the Coinbase Account and the Mustang Lane Property by Defendants;

94.     For a judgment declaring 1221 Skai Investments liable for all of Skanda's and/or Karri's debts to Plaintiff, including in the amount of a minimum of $2,580,000, as an alter ego of Skanda and/or Karri and for a monetary judgment in said amount;

95.     For costs of suit incurred herein;

96.     For prejudgment interest;

97.     For attorneys' fees and costs;

98.     For punitive damages; and

99.     For such other and further relief as the Court may deem to be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all causes of action, claims or issues in this action that are triable as a matter of right.

Date:  March 18, 2022

Respectfully submitted,

*/s/ Jeremy T. Elman*
JEREMY T. ELMAN (SBN 223696)
Jeremy.Elman@allenovery.com
ALLEN & OVERY LLP
10250 Constellation Blvd, Suite 1000
Los Angeles, California 90067
Telephone:  (650) 388-1650
Facsimile:   (650) 388-1699

FERNANDO J. MENENDEZ, JR. (*pro hac vice* application forthcoming)
fmenendez@sequorlaw.com
FRANCIS CURIEL (*pro hac vice* application forthcoming)

- 22 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

fcuriel@sequorlaw.com
SEQUOR LAW
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile:  (305) 372-8202

*Attorneys for Plaintiff SAFETY PPE, LLC*

- 23 -